# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE FIRSTCASH HOLDINGS, INC. SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§ | Civil Action No. 4:22-cv-00033-P<br><br>CLASS ACTION |

## BRIEF IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

## ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

PROCEDURAL STATUS................................................................................................ 4

ARGUMENT.................................................................................................................... 4

I.    THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM
      UNDER SECTION 10(B) OF THE EXCHANGE ACT...................................... 5

    A.    The Amended Complaint Fails to Plead an Actionable Misrepresentation
      or Omission. ......................................................................................... 6

        1.    Statements re Financial Performance............................................ 6

        2.    Statements re Regulatory Environment. ....................................... 9

        3.    Statements re Company Operations and Training. ................................. 12

        4.    Item 303 Disclosure. ................................................................. 13

    B.    The Amended Complaint Fails to Plead Particularized Facts Supporting a
      Strong Inference of Scienter. ............................................................... 14

        1.    The Amended Complaint Impermissibly Seeks to Establish
      Scienter Through Group Pleading. ............................................. 14

        2.    The Scienter Allegations in the Amended Complaint Do Not Meet
      the Heightened Standard Required Under the PSLRA. ............................ 15

        3.    The Statements Attributed to Confidential Witnesses Do Not
      Provide the Strong Inference of Scienter Necessary to Save These
      Claims. ................................................................................... 17

            a.    Internal Controls and Audit Processes......................................... 18

            b.    MLA Training and Education....................................................... 21

        4.    The Scienter Allegations Are Not as Cogent and Compelling as the
      Opposing Inferences. ............................................................... 23

    C.    The Amended Complaint Fails to Plead Loss Causation.................................... 24

II.     THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM
        UNDER SECTION 20(A) OF THE EXCHANGE ACT. .................................................. 25

CONCLUSION ............................................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abrams v. Baker Hughes, Inc.*,
  292 F.3d 424 (5th Cir. 2002) ....................................................................................... *passim*

*Alaska Elec. Pension Fund v. Asar*,
  768 F. App'x 175 (5th Cir. 2019) ..........................................................................................20

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
  915 F.3d 975 (5th Cir. 2019) ...........................................................................................14, 17

*Ash v. PowerSecure Int'l., Inc.*,
  No. 4:14–CV–92–D, 2015 WL 5444741 (E.D.N.C. Sept. 15, 2015) ....................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................5

*Brown v. InnerWorkings, Inc.*,
  No. SACV 18-00832-CJC(KESx), 2019 WL 4187385 (C.D. Cal. Mar. 27,
  2019) .....................................................................................................................................18

*Budde v. Global Power Equip. Grp., Inc.*,
  No. 3:15-cv-1679-M, 2017 WL 6621540 (N.D. Tex. Dec. 27, 2017)....................................22

*Budde v. Global Power Equip. Grp., Inc.*,
  No. 3:15-cv-1679-M, 2018 WL 4623108 (N.D. Tex. Sep. 11, 2018) ....................................18

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
  497 F.3d 546 (5th Cir. 2007) ................................................................................................17

*CFPB v. FirstCash, Inc., and Cash America West, Inc.*,
  Civil Action No. 4:21-cv-01251-P (N.D. Tex.)........................................................................1

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)..................................................................................................12

*Crutchfield v. Match Grp., Inc.*,
  529 F. Supp. 3d 570, 596 (N.D. Tex. 2021) ....................................................................15, 21

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..............................................................................................................24

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................................23

*Elec. Workers Pension Fund, Local 103 v. Six Flags Entm't Corp.*,
    524 F. Supp. 3d 501 (N.D. Tex. 2021) .............................................................8, 16, 21

*Emps.' Ret. Sys. of Haw. v. Whole Foods Mkt., Inc.*,
    905 F.3d 892, 904 (5th Cir. 2018) .......................................................................................24

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)............................................................................................................14

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) .............................................................................................15

*Gamboa v. Citizens, Inc.*,
    No. A–17–CV–241–RP, 2018 WL 2107205 (W.D. Tex. May 7, 2018) ...........................18, 23

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019)..................................................................................................7

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) .........................................................................................17

*Guidry v. Bank of LaPlace*,
    954 F.2d 278 (5th Cir. 1992) ...............................................................................................5

*Heck v. Triche*,
    775 F.3d 265 (5th Cir. 2014) .............................................................................................25

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ...............................................................................................6

*Ho v. Flotek Indus.*,
    248 F. Supp. 3d 847 (S.D. Tex. 2017) ...............................................................................18

*In re Best Buy Co. Sec. Litig.*,
    No. Civ. 03–6193ADMAJB, 2005 WL 839099 (D. Minn. Apr. 12, 2005)............................13

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ...............................................................................13

*In re Capstead Mortg. Corp. Sec. Litig.*,
    258 F. Supp. 2d 533 (N.D. Tex. 2003) .................................................................................8

*In re Cyberonics Inc. Sec. Litig.*,
    523 F. Supp. 2d 547 (S.D. Tex. 2007) ...............................................................................17

*In re Key Energy Servs. Sec. Litig.*,
　166 F. Supp. 3d 822 (S.D. Tex. 2016) ................................................................ *passim*

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
　307 F. Supp. 3d 583 (S.D. Tex. 2018) ..............................................................16, 17

*In re Tenet Healthcare Corp. Sec. Litig.*,
　No. 3:16-CV-2848-C, 2017 WL 11638941 (N.D. Tex. Dec. 20, 2017) ...................................12

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
　537 F.3d 527 (5th Cir. 2008) ...................................................................... *passim*

*Jacobowitz v. Range Res. Corp.*,
　2022 WL 976003 (N.D. Tex. Mar. 31, 2022) .......................................................8, 10, 15, 23

*Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*,
　810 F.3d 951 (5th Cir. 2016) ...............................................................................15

*Lovelace v. Software Spectrum*,
　78 F.3d 1015 (5th Cir. 1996) ...............................................................................25

*Magruder v. Halliburton Co.*,
　359 F. Supp. 3d 452 (N.D. Tex. 2018) ...............................................................8, 9

*Markman v. Whole Foods Mkt., Inc.*,
　No. 1:15-CV-681-LY, 2016 WL 10567194 (W.D. Tex. Aug. 9, 2016) ..................................13

*Martin v. GNC Holdings, Inc.*,
　No. 2:15-cv-01522, 2017 WL 3974002 (W.D. Pa. Sept. 8, 2017) .........................................24

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
　540 F.3d 1049 (9th Cir. 2008) .........................................................................6, 23

*Meyer v. Greene*,
　710 F.3d 1189 (11th Cir. 2013) ...........................................................................24

*Mizzaro v. Home Depot, Inc.*,
　544 F.3d 1230 (11th Cir. 2008) ...........................................................................23

*Mun. Empls.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*,
　935 F.3d 424 (5th Cir. 2019) .................................................................5, 13, 17, 18

*Nathenson v. Zonagen Inc.*,
　267 F.3d 400 (5th Cir. 2001) ...............................................................................14

*Neiman v. Bulmahn*,
　854 F.3d 741 (5th Cir. 2017) ...........................................................................16, 17

*Okla. Firefighters Pension & Ret. Sys. v. IXIA*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) ................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..............................................................................................................10

*Oughtred v. E\*Trade Fin. Corp.*,
  No. 08 Civ. 3295(SHS), 2011 WL 1210198 (S.D.N.Y. Mar. 31, 2011) ...............................22

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ...............................................................................................15

*Peak v. Zion Oil & Gas, Inc.*,
  No. 3:18-CV-02067-X, 2020 WL 1047894 (N.D. Tex. 2021 Mar. 3, 2021)..........................15

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ......................................................................................................7

*Plumbers Local #200 Pension Fund v. Wash. Post Co.*,
  930 F. Supp. 2d 222 (D.D.C. 2013) .....................................................................................23

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) ...............................................................................................14

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ...............................................................................................14

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977)..............................................................................................................20

*Sapssov v. Health Mgmt. Assocs., Inc.*,
  22 F. Supp. 3d 1210 (M.D. Fla. 2014)..................................................................................24

*Shushany v. Allwaste, Inc.*,
  992 F.2d 517 (5th Cir. 1993) .................................................................................................8

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d 353 (5th Cir. 2004) .................................................................................... *passim*

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)................................................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................5, 18, 23, 24

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
  336 F.3d 375 (5th Cir. 2003) .................................................................................................5

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8.................................................................................................................1, 4, 5

Fed. R. Civ. P. 9(b) ........................................................................................................1, 4, 5, 8

Fed. R. Civ. P. 12...................................................................................................................5

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 4

**STATUTES**

Military Lending Act, 10 U.S.C. § 987.................................................................. *passim*

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)........................... *passim*

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ......... *passim*

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)..............................3, 25

**RULES AND REGULATIONS**

Limitations on Terms of Consumer Credit Extended to Service Members and
    Dependents, 80 Fed. Reg. 43560, 2015 WL 4452309 (July 22, 2015)...................................22

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ..................................................................5, 13

Defendants FirstCash Holdings, Inc. ("FirstCash" or the "Company"), Rick L. Wessel and R. Douglas Orr (collectively, "Defendants") respectfully submit this opening memorandum in support of their motion to dismiss the Amended Class Action Complaint ("Amended Complaint" or "AC") pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b).

## PRELIMINARY STATEMENT

On November 12, 2021, the Consumer Financial Protection Bureau ("CFPB") filed an action against two FirstCash subsidiaries alleging violations of the Military Lending Act ("MLA"), 10 U.S.C. § 987, which governs the extension of credit to active-duty service members and their dependents. *CFPB v. FirstCash, Inc., and Cash America West, Inc.*, Civil Action No. 4:21-cv-01251-P (N.D. Tex.). In a press release announcing the filing of the litigation, the CFPB emphasized that the "complaint is not a final finding or ruling that the defendants have violated the law."[1] Eight months later, the CFPB still has not provided evidence of even a single MLA violation, nor has it established that the statutory bona fide error defense – which provides that a "person may not be held liable for civil liability under [the MLA] if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error" – would not exculpate the Company from potential liability even had such violations occurred.

Notwithstanding this reality, a FirstCash stockholder commenced this putative securities class action alleging that the Company's filings with the Securities and Exchange Commission ("SEC") over nearly a four-year period were materially false and misleading in violation of federal securities laws because they omitted disclosures concerning the Company's compliance with the

---

[1]    Appendix ("App.") 40, at 767.

- 1 -

MLA. According to the stockholder, the mere filing of the civil action by the CFPB demonstrates weaknesses in the Company's internal controls and somehow establishes securities fraud by the Company and two of its senior executives.

Lead Plaintiff has now filed an Amended Complaint. Notwithstanding its prolix length and superficial detail, the pleading falls far short of meeting the federal pleading standard, let alone the heightened standard for pleading securities fraud claims mandated by the PSLRA.

- **Falsity**. The Amended Complaint fails to plead particularized facts demonstrating that the challenged statements were false or misleading. Instead, Lead Plaintiff simply reproduces long swaths from FirstCash's public filings followed by a laundry list of "reasons" that the passages were purportedly false or misleading. That is plainly insufficient under the PSLRA.

- **Scienter**. The Amended Complaint fails to plead particularized facts supporting a strong inference of scienter as to each defendant and each statement. The claims in this case lack the typical hallmarks supporting scienter, such as allegations of insider stock sales, excerpts from "smoking gun" documents or evidence that the defendants had knowledge of any fraud. Instead, the scienter allegations in this case are premised on paper-thin allegations concerning defendants' positions, alleged training deficiencies and Sarbanes-Oxley ("SOX") certifications for which the accuracy of the financial reporting has not been challenged. Taken individually or holistically, a strong inference of scienter is not plausible from such frail allegations.

- **Loss Causation**. The Amended Complaint fails to plead particularized facts supporting loss causation. The filing of the CFPB action did not reveal the "truth" concerning any fraud and, therefore, cannot supply the foundational basis for pleading loss causation.

- **Collateral Claim**. The Amended Complaint fails to plead distinguishing facts supporting the independent viability of the tag-along Section 20(a) claim.

Lead Plaintiff has had eight months to develop its theories and claims. The sum total of its efforts is a piggyback complaint that falls well short of stating a plausible claim under the federal securities laws. Accordingly, the Motion should be granted and the claims should be dismissed.

### STATEMENT OF FACTS

FirstCash is a leading operator of pawn stores with locations in the United States, Central America and South America. [AC, ¶ 2.] Mr. Wessel serves as the Chief Executive Officer of the Company; Mr. Orr serves as its Chief Financial Officer. [AC, ¶¶ 20-21.]

In September 2016, a FirstCash predecessor merged with Cash America International, Inc., which provided both pawn transactions and payday loans. [AC, ¶¶ 4, 32.] Several years earlier, Cash America had entered into a Consent Order targeted at payday lending practices of its subsidiary Enova International, Inc., which was accused of improperly making 362 payday loans between 2008-2012 to active-duty military members generating a total of $33,550 in loan and loan-related fees.[2] [AC, ¶¶ 5, 42-43 and Ex. A thereto.] As part of its resolution with the CFPB, Cash America, which did not admit or deny any findings of fact or conclusions of law, submitted a compliance plan to the CFPB for review. [AC, ¶ 44 and Ex. A.] Cash America divested the Enova subsidiary two years before Cash America's 2016 merger with FirstCash, Inc. [AC, ¶ 210.]

On November 12, 2021, the CFPB filed an action alleging violations of the MLA against two FirstCash subsidiaries. The CFPB has not provided support for its allegations even after the Company produced extensive information, including its policies and procedures for complying

---

[2] The CFPB's primary focus in the Consent Order was on other non-MLA debt collection and record-keeping practices at Enova and another Cash America subsidiary. [AC, Ex. A.]

with the MLA, the form of pawn contracts in use around the country and data for approximately 3.1 million pawn transaction.  [AC, ¶ 71.]  The two subsidiaries have a motion for partial summary judgment pending based on the statutory bona fide error defense, 10 U.S.C. § 987(f)(5)(D).

## PROCEDURAL STATUS

Genesee County Employees' Retirement System filed the original complaint in this action on January 14, 2022.  [Doc. 1.]  That pleading alleged that from February 1, 2018 to November 12, 2021, FirstCash issued materially false and/or misleading statements in its periodic SEC filings.[3]  [*Id*.]  On March 17, 2022, the Court appointed Wayne County Employees' Retirement System to serve as Lead Plaintiff.  [Doc. 26.]  An Amended Complaint was filed on May 4, 2022.  [Doc. 42.]  This constitutes Defendants' response to that pleading.  For the reasons set forth herein, the motion should be granted pursuant to Fed. R. Civ. P. 8, 9(b), 12(b)(6) and the PSLRA.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded sufficient facts to support a claim under any cognizable legal theory.  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).  Properly pleaded material allegations in a complaint are accepted as true solely for purposes of the motion, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[3]   After filing the original complaint in this action, Genesee County Employees' Retirement System did not seek to serve as lead plaintiff in this action.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, conclusory allegations "will not suffice to prevent a motion to dismiss" and neither will "unwarranted deductions of fact."  *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

## I.   THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 10(B) OF THE EXCHANGE ACT.

The Amended Complaint purports to state a claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  In order to state such a claim, the Amended Complaint must plead, and the plaintiff must ultimately prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019).

In addition to satisfying Rules 8, 9(b) and 12, the PSLRA provides "high standards for pursuing federal securities fraud suits in order to check 'frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims.'" *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 532 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Among other things, the PSLRA's heightened standard requires that "any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u-4(b)(2)." *Tellabs,* 551 U.S. at 321.  "If the complaint fails to meet these

requirements, 'the court shall, on the motion of any defendant, dismiss the complaint.'" *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting § 78u-4(b)(3)(A)).  In that regard, the PSLRA serves as "a mechanism for winnowing out suits that lack a requisite level of specificity." *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 435 (5th Cir. 2002).  The Amended Complaint in this case fails to meet this heightened pleading standard.

### A.    The Amended Complaint Fails to Plead an Actionable Misrepresentation or Omission.

The Amended Complaint falls far short of pleading a viable Section 10(b) claim through its failure to allege with specificity an actionable misrepresentation or omission of a material fact. 15 U.S.C. § 78u-4(b)(1).  "By requiring specificity, § 78u-4(b)(1) prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). The alleged misrepresentations and omissions in this case fall into three broad categories, none of which is sufficient to state a plausible claim under the federal securities laws: (i) financial performance; (ii) regulatory environment; and (iii) Company operations and training.[4]

### 1.    Statements re Financial Performance.

Lead Plaintiff alleges that statements reporting the Company's financial performance during the putative class period were misleading because they failed to disclose "adverse facts pertaining to the lending practices at FirstCash."[5]  [AC, ¶ 86.]  As an example, the Amended

---

[4]  The Amended Complaint alleges that the statements "highlighted in ***bold and italics***" in Section VI of the pleading were materially misleading.  [AC ¶ 75.]  In the interest of brevity, Defendants will discuss the challenged statements in groups with citation to those portions of the Amended Complaint where the statements occur.  For the Court's convenience, a summary chart of the challenged statements is included as Appendix 1 to this Motion.

[5]  App. 1, at 002-023 (Group 1 Statements).

Complaint challenges a February 1, 2018 Form 8-K disclosing that (i) FirstCash had achieved record revenue, net income and earnings per share for the year; (ii) the Company's U.S. segment revenue for the quarter and year from pawn loan fees was approximately $93 million and $380 million, respectively; and (iii) the Company's U.S. pawn loans outstanding totaled $276.6 million as of December 31, 2017.  [AC, ¶ 77.]  The Amended Complaint does not contend that these reported figures have ever been restated, or that they are inaccurate in any way.  Instead, the Amended Complaint alleges that these accurately-reported figures were misleading because they "were, in part, the product of the Company's violations of the MLA and the 2013 Consent Order." [AC, ¶ 86(h).]  This type of tautological pleading approach is insufficient under the PSLRA.

*First*, the Amended Complaint fails to plead particularized facts demonstrating that the Company violated the MLA.  Lead Plaintiff does not plead when these supposed transactions occurred, how many such transactions occurred or any facts supporting this pivotal allegation. Instead, the sole basis for this conclusion appears to be the filing of the CFPB lawsuit.  [AC, ¶¶ 10, 53.]  That is not sufficient.  *See Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021) ("When a securities fraud claim is premised on the defendant's predicate violations of law or accounting standards, the facts of that underlying violation must be pled with particularity.") (collecting cases); *In re Key Energy Servs. Sec. Litig*., 166 F. Supp. 3d 822, 872 (S.D. Tex. 2016) ("not a single specific violation of the FCPA (identifying the nature of the violation, when, where, and who was involved) is alleged"). "Requiring that illegal acts underpinning a securities fraud suit be pleaded with particularity also comports with the stated intent and public policy rationale of the PSLRA."  *Gamm v. Sanderson Farms, Inc*., 944 F.3d 455, 464 (2d Cir. 2019).

*Second*, the Amended Complaint fails to plead particularized facts linking any violation of the MLA to the Company's financial statements. "[U]nder the heightened pleading standards set forth by the PSLRA, the plaintiffs must allege specifically how much revenue was overstated, how that amount was determined, and why the defendants were required to report revenue differently." *Elec. Workers Pension Fund, Local 103 v. Six Flags Ent. Corp.*, 524 F. Supp. 3d 501, 529 (N.D. Tex. 2021) (Pittman, J.). Where, as here, the plaintiff "make[s] no attempt to estimate by how much the earnings were inflated," and provides "no standard of comparison to what the correct numbers would have been," the pleading fails to adequately plead a Section 10(b) claim. *Jacobowitz v. Range Res. Corp.*, No. 4:21-cv-0751-P, 2022 WL 976003, at *12 (N.D. Tex. Mar. 31, 2022) (Pittman, J.) (internal quotation marks omitted).

In *Range Resources*, stockholders filed a securities class action after the company disclosed a settlement with a Pennsylvania regulator relating to a misclassification of oil wells. In rejecting the argument that the misclassification of wells caused the company's financial statements to be false or misleading, the Court held that "[u]nder the PSLRA and Rule 9(b), plaintiffs must do more than cite 'particular statements from . . . financial reports, and allege[] variously that they were 'materially false and misleading as such amounts were improperly inflated,' were 'made without a reasonable basis,' and were 'inaccurate' due to the fraudulent accounting procedures.'" *Id.* at *11 (quoting *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir. 1993)). Similarly, in *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533 (N.D. Tex. 2003), the Court held that it "is not sufficient to simply allege certain facts that support a final conclusion, when those 'facts' themselves are conclusory." *Id.* at 550. And, in *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452 (N.D. Tex. 2018), the Court dismissed an action where there were "no allegations in the SAC of what the allegedly misstated reserves should have been." *Id.* at 465-66.

*Third*, the Amended Complaint does not plead that MLA violations had a material effect on the Company's financial statements. The Cash America Consent Order indicates that the CFPB identified 362 payday loans made to active-duty members during the 2008-12 time period which generated $33,550 in loan and loan-related fees for Cash America. [AC, Ex. A.] The current CFPB action purportedly questions 3,600 loans culled from a set of 3.1 million transactions (*i.e.*, 0.12% of the loans). The Amended Complaint does not demonstrate that the percentage of challenged loans or revenue attributed to those loans are material to a business generating over $1.6 billion in annual revenue. The Amended Complaint also does not account for the potential absence of any impact from the CFPB action as a result of the bona fide error defense. The Amended Complaint simply – and improperly – assumes away materiality.

### 2.    Statements re Regulatory Environment.

The Amended Complaint next asserts that statements concerning FirstCash's regulatory environment were misleading because Defendants failed to disclose "adverse facts pertaining to the lending practices at FirstCash." [AC, ¶ 86.] Three types of statements are challenged: (a) statements noting the "stable regulatory environment" for pawn and that "regulations are primarily at the state level in the U.S. and the federal level in Latin America"[6]; (b) statements noting that the CFPB's small-dollar loan rule scheduled to take effect in 2019 did not apply to the non-recourse pawn loans offered by the Company[7]; and (c) general statements concerning the impact and complexity of the MLA on the Company's business.[8] The Amended Complaint stretches too far in trying to plead a fraud claim based on any of these statements.

---

[6]    App. 1, Statement Nos. 32, 34-37, 39-42, 44-47, 49-51.

[7]    App. 1, Statement Nos. 32, 34.

[8]    App. 1, Statement Nos. 33, 38, 43, 48.

*First*, the Amended Complaint does not identify anything in the statements that is false. There is no dispute that pawn regulations are primarily at the state level in the U.S., that the CFPB's small-dollar loan rule did not apply to the non-recourse pawn transactions offered by the Company, and that the MLA Rule has prevented FirstCash from offering certain pawn services and short-term unsecured credit products to members of the military or their dependents.

*Second*, the statements in this group largely consist of non-actionable statements of opinion concerning the regulatory environment in which the Company operates. *See generally Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong. That clause, limited as it is to factual statements, does not allow investors to second-guess inherently subjective and uncertain assessments."). As this Court recently explained in *Range Resources*, to "determine whether an opinion statement is misleading, courts 'must address the statement's context' by taking 'account of whatever facts [the defendant] *did* provide about legal compliance, as well as any other hedges, disclaimers or qualifications it included in its registration statement.'" *Range Res.*, 2022 WL 976003, at *7 (quoting *Omnicare*, 575 U.S. at 196-97).

Here, the Amended Complaint ignores extensive disclosures in the Company's Form 10-Ks concerning the regulatory environment in which it operates (emphasis in original):

> **The Company's products and services are subject to extensive regulation and supervision under various federal, state and local laws, ordinances and regulations in both the U.S. and Latin America. If changes in regulations affecting the Company's pawn, credit services and consumer loan businesses create increased restrictions, or have the effect of prohibiting loans in the jurisdictions where the Company offers these products, such regulations could materially impair or reduce the Company's pawn, credit services and consumer loan businesses and limit its**

*expansion into new markets*.[9]

\*    \*    \*    \*    \*

***The CFPB has regulatory, supervisory and enforcement powers over providers of consumer financial products and services in the U.S., and it could exercise its enforcement powers in ways that could have a material adverse effect on the Company's business and financial results.***[10]

\*    \*    \*    \*    \*

The MLA Rule . . . expanded the scope of the credit products covered by the MLA to include overdraft lines of credit, pawn loans, or vehicle and certain unsecured installment loan products to the extent any such products have a military annual percentage rate greater than 36%. While the Company does not believe that active members of the U.S. military or their dependents comprise a significant percentage of the historical customer base in most locations, compliance with the MLA Rule, including its safe harbor provisions, is complex, increases compliance risks and related costs and limits the potential customer base of the Company.[11]

\*    \*    \*    \*    \*

On November 20, 2013, Cash America consented to the issuance of a consent order by the CFPB pursuant to which it agreed, without admitting or denying any of the facts or conclusions made by the CFPB from its 2012 review of Cash America's consumer loan business . . . . Any noncompliance with the Consent Order, continuing obligations or similar orders or agreements from other regulators could lead to further regulatory penalties and could have a material adverse effect on the Company's business.[12]

In sum, no reasonable investor could have found misleading the Company's general statements concerning the regulatory environment in which it operates.

---

[9] App. 4, at 096; App. 13, at 276; *see also* App. 22, at 463 (updated iteration); App. 32, at 646 (same).

[10] App. 4, at 097; App. 13, at 277; App. 22, at 463; App. 32, at 647.

[11] App. 13, at 275; App. 22, at 462; App. 32, at 645; *see also* App. 4, at 095, 098-99 (previous iteration).

[12] App. 4, at 100.

*Third*, the challenged statements constitute non-actionable puffery under the federal securities laws. Statements "are non-actionable puffery [if] they are 'of the vague and optimistic type that cannot support a securities fraud action . . . and contain no concrete factual or material misrepresentation.'" *Southland Sec. Corp. v. INSpire Ins. Sols. Inc*., 365 F.3d 353, 372 (5th Cir. 2004). "No compliance efforts will ever be 100 percent effective at detecting or stopping all bad conduct inside a large company and 'general statements about . . . compliance with ethical norms are inactionable puffery.'" *In re Tenet Healthcare Corp. Sec. Litig*., No. 3:16-CV-2848-C, 2017 WL 11638941, at *4 (N.D. Tex. Dec. 20, 2017) (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014)). No reasonable investor could have drawn conclusions about the Company's compliance with the MLA from these general statements.

### 3.    Statements re Company Operations and Training.

Lead Plaintiff last challenges statements concerning the Company's general operations and training. For example, the Amended Complaint challenges statements noting that the Company (a) "utilizes a proprietary computer information system that provides fully-integrated functionality to support point-of-sale retail operations, real-time merchandise valuations, loan-to-value calculations, inventory management, customer recordkeeping, loan management, compliance and control systems and employee compensation" and allows management "to continuously monitor store transactions and operating results"[13]; (b) "maintains a well-trained internal audit staff that conducts regular store visits to test compliance of financial and operational controls"[14]; and (c) has "employee-training programs that promote customer service, productivity and professionalism."[15]

---

[13]    App. 1, Statement Nos. 53, 56-57; *see also* App. 1, Statement No. 58 (updated iteration).

[14]    App. 1, Statement Nos. 53; *see also* App. 1, Statement Nos. 56-58 (various updated iterations).

[15]    App. 1, Statement Nos. 56-59.

None of these types of allegations supports a securities fraud claim. The Amended Complaint does not plead particularized facts that these statements were untrue when made. Indeed, the confidential witnesses admit that the Company's field auditors monitored stores for "inventory, accounting, and related controls" and that the Company provided "basic training and instructions to employees regarding the MLA." [AC, ¶¶ 59-60, 67-69.] The statements also are non-actionable "puffery" because they "contain no concrete factual or material misrepresentation" and are too vague to support a federal securities fraud claim. *Southland*, 365 F.3d at 372; *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 805-06 (S.D. Tex. 2012) (rejecting claim that statement was false due to "lack of training among BP personnel"); *In re Best Buy Co. Sec. Litig.*, No. Civ. 03–6193ADMAJB, 2005 WL 839099, at *5 (D. Minn. Apr. 12, 2005) (claim that defendant "failed to adequately train . . . personnel" as "too vague and general to meet the particularity requirements of the PSLRA").

### 4. Item 303 Disclosure.

Lead Plaintiff last asserts that "the Company's Forms 10-K and 10-Q were materially misleading because they failed to disclose the information required by Item 303 of SEC Regulation S-K." [AC, ¶ 195.] The assertion that Item 303 provides a toehold for a securities fraud claim misses the mark. The Fifth Circuit has "never held that Item 303 creates a duty to disclose under the Securities Exchange Act." *Pier 1 Imps.*, 935 F.3d at 436-37. Indeed, "Item 303 is not a magic black box in which inadequate allegations under Rule 10b-5 are transformed, by means of broader and different SEC regulations, into adequate allegations under Rule 10b-5." *Markman v. Whole Foods Mkt., Inc.*, No. 1:15-CV-681-LY, 2016 WL 10567194, at *10 (W.D. Tex. Aug. 9, 2016) (quoting *Ash v. PowerSecure Int'l., Inc.*, No. 4:14–CV–92–D, 2015 WL 5444741, at *11 (E.D.N.C. Sept. 15, 2015)).

**B.**     **The Amended Complaint Fails to Plead Particularized Facts Supporting a Strong Inference of Scienter.**

The Amended Complaint also falls far short of pleading a strong inference of scienter.  The PSLRA requires that "the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The "term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976); *Alaska Elec. Pension Fund v. Flotek Indus., Inc*., 915 F.3d 975, 981 (5th Cir. 2019).  Although scienter can include "severe recklessness," that standard "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."  *Rosenzweig v. Azurix Corp*., 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Nathenson v. Zonagen Inc.,* 267 F.3d 400, 408 (5th Cir. 2001)).  This showing must be made as to each defendant.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005).

**1.**     **The Amended Complaint Impermissibly Seeks to Establish Scienter Through Group Pleading.**

The Amended Complaint initially fails to satisfy the stringent requirements for pleading scienter because it indiscriminately lumps together defendants and attempts to cobble together a scienter theory without particularized facts as to each defendant and each claim as required by the PSLRA.  "Scienter must be alleged with respect to 'the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.'"  *Flotek*, 915 F.3d at 982 (quoting *Southland*, 365 F.3d at 366)).  In proceeding

- 14 -

otherwise, Lead Plaintiff presses a group pleading approach which has been soundly, *and repeatedly*, rejected by the courts in this Circuit. *See, e.g., Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) ("[T]his court has rejected the 'group pleading approach to scienter,' and focuses on the state of mind of the corporate officials who make, issue, or approve the statement rather than the 'collective knowledge of all the corporation's officers and employees.'") (quoting *Southland*, 365 F.3d at 368); *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009); *Shaw Grp.,* 537 F.3d at 533; *Range Res.*, 2022 WL 976003, at \*16-18; *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 596 (N.D. Tex. 2021); *Peak v. Zion Oil & Gas, Inc.*, No. 3:18-CV-02067-X, 2020 WL 1047894, at \*4-5 (N.D. Tex. 2021 Mar. 3, 2021). Messrs. Wessel and Orr are not even mentioned in the scienter section of the Amended Complaint other than to note that they signed SOX certifications. The failure to plead a strong inference of scienter as to each defendant and each claim is fatal to this claim.

### 2. The Scienter Allegations in the Amended Complaint Do Not Meet the Heightened Standard Required Under the PSLRA.

The Amended Complaint also falls short in attempting to plead scienter through a grab bag of discordant theories and bare conclusions. The pleading careens from one scienter theory to the next without providing specificity as to how each defendant acted with the requisite state of mind.

*Receipt of Information*. The Amended Complaint alleges that "Defendants, by virtue of their receipt of information reflecting the true facts regarding FirstCash, and their control over and/or receipt and/or modification of FirstCash's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein." [AC, ¶ 213.] The Amended Complaint does not identify what information was received by which defendants, when that information was received, or how that supposed information has any relationship to the

- 15 -

specific statement challenged.  "An unsupported general claim about the existence of confidential corporate reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss."  *Abrams,* 292 F.3d at 432; *In re Plains All Am. Pipeline, L.P. Sec. Litig*., 307 F. Supp. 3d 583, 616 (S.D. Tex. 2018) ("To the extent that the plaintiffs' scienter argument is based on the availability of some internal document setting out certain facts, the complaint must make specific allegations about the document, its author, contents and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made."); *Key Energy*, 166 F. Supp. 3d at 867 ("[A]llegations of unnamed documents or regular reports that Individual Defendants received by virtue of their positions will not suffice.").  Instead, for "internal corporate reports alone to support a strong inference of scienter (1) the complaint must have 'corroborating details regarding the contents of allegedly contrary reports, their authors and recipients[,]' and (2) the corporate reports be connected to the speaking executive in a persuasive way."  *Neiman v. Bulmahn*, 854 F.3d 741, 748 (5th Cir. 2017) (citation omitted); *Six Flags*, 524 F. Supp. 3d at 536 ("Reliance on the internal reports is particularly weak as to Barber since there is no pled allegation that the reports were presented to Barber or that he ever reviewed them.").  None of those details are pled in the Amended Complaint.

*Executive Positions*.  The Amended Complaint next alleges that the "scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the severe recklessness of, personnel at the highest levels of the Company, including the Individual Defendants" and that the "Individual Defendants, because of their positions with FirstCash, controlled the contents of FirstCash's public statements during the Class Period."  [AC, ¶¶ 214-15.]  "As a general matter, '[a] pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within

the company.'" *Neiman*, 854 F.3d at 749 (quoting *Abrams*, 292 F.3d at 432); *Flotek*, 915 F.3d at 982 (scienter allegations "ordinarily must be based on more than an individual's position within the company"). In other words, it "simply is not enough to argue that defendants must have known of the fraud given their positions." *In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 554 (S.D. Tex. 2007). And, yet, that is exactly what is pled in the Amended Complaint.

*SOX Certifications*. The Amended Complaint alleges that "Defendants' scienter is further underscored by the certifications mandated by the Sarbanes-Oxley Act of 2002." [AC, ¶ 216.] Not so. "Sarbanes-Oxley certifications support scienter only if there are 'facts establishing that the officer who signed the certification had a 'reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions.'" *Pier 1 Imps.*, 935 F.3d at 434 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)); *Shaw Grp.*, 537 F.3d at 545; *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007). No such allegations are made concerning Messrs. Wessel or Orr. Accordingly, as in *Plains*, *Key Energy* and many other cases, this Court should reject SOX certifications as a basis for finding scienter. *Plains*, 307 F. Supp. 3d at 643 (scienter allegations are "not sufficient to establish a cogent and compelling inference of scienter" where the falsity allegations "do not show that the individual defendants were on notice of 'glaring irregularities or red flags'"); *Key Energy*, 166 F. Supp. 3d at 871 (no inference of scienter where the plaintiff failed "to identify anything in the certifications that is false, and it does not claim that Key misstated any financial information").

### 3. The Statements Attributed to Confidential Witnesses Do Not Provide the Strong Inference of Scienter Necessary to Save These Claims.

The Amended Complaint last alleges that statements attributed to confidential witnesses ("CWs") provide support for finding scienter. [AC, ¶ 217(e).] The Fifth Circuit has been clear

that "courts must discount allegations from confidential sources" because they "afford no basis for drawing the plausible competing inferences required by *Tellabs*." *Shaw Grp.*, 537 F.3d at 535; *Pier 1 Imps.*, 935 F.3d at 433. That is particularly so with respect to the statements attributed to the CWs referenced in the Amended Complaint.

### a.    Internal Controls and Audit Processes.

The Amended Complaint alleges that statements by CWs "confirm" that the Company "failed to implement adequate internal controls and audit processes to detect MLA violations." [AC, ¶¶ 57-61.] Opinions from CWs that a company's controls are inadequate "add nothing to scienter analysis." *Key Energy*, 166 F. Supp. 3d at 862; *Ho v. Flotek Indus.*, 248 F. Supp. 3d 847, 858 (S.D. Tex. 2017) ("lack of internal controls in and of itself is insufficient to give rise to the required strong inference of scienter"), *aff'd*, 915 F.3d 975 (5th Cir. 2019). Indeed, "[w]ithout specific factual allegations, the mere existence of deficient internal controls is 'insufficient to give rise to a strong inference of scienter.'" *Brown v. InnerWorkings, Inc.*, No. SACV 18-00832-CJC(KESx), 2019 WL 4187385, at *4 (C.D. Cal. Mar. 27, 2019) (quoting *Okla. Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1364-65 (C.D. Cal. 2014) (collecting cases)).

For example, in *Budde v. Global Power Equip. Grp., Inc.*, No. 3:15-cv-1679-M, 2018 WL 4623108, at *7 (N.D. Tex. Sep. 11, 2018), the Court found that that the plaintiffs "do not plausibly allege that [defendants] knew of or recklessly disregarded Global Power's lack of internal controls" when they relied on findings by an outside auditor that the company "maintained, in all material respects, effective control over financial reporting." Similarly, in *Gamboa v. Citizens, Inc.*, No. A–17–CV–241–RP, 2018 WL 2107205, at *4 (W.D. Tex. May 7, 2018), the court held that the fact that "every one of [defendant's] allegedly misleading statements was reviewed by independent outside auditors" was "evidence supporting the inference that [defendant] was not

acting with an intent to defraud and mislead, but rather that they had reason to believe the disclosures were adequate." And, in *Key Energy*, the court found an absence of scienter where:

> none of the CWs (1) "alleges that an FCPA violation actually occurred," (2) "alleges that he ever reported his concerns about FCPA controls . . . and (3) "allegedly ever communicated his concerns, directly or even indirectly, to any of the Individual Defendants – none claims to have told any of the Individual Defendants of any problems with FCPA controls, nor did any author any memos or see any reports decrying the state of FCPA controls directed to Individual Defendants."

*Key Energy*, 166 F. Supp. 3d at 861-62.

So too here. None of the CWs alleges that a violation of the MLA actually occurred. None of the CWs alleges that he or she ever met Messrs. Wessel or Orr, let alone informed them of perceived deficiencies in the Company's internal controls. None of the CWs alleges that he or she brought any such concerns to the Company's external auditors who issued annual written opinions expressing the view that "the Company maintained, in all material respects, effective internal control over financial reporting."[16] In short, the Amended Complaint "point[s] to no allegations that the defendants knew about the internal control problems." *Abrams*, 292 F.3d at 431-32. Accordingly, as in *Key Energy* and many other decisions, opinions concerning internal controls by the CWs in this case "add nothing to scienter analysis."

The Amended Complaint attempts to sidestep this clear defect by pointing to statements attributed to CWs suggesting that (i) the Company's "culture changed for the worse" after the acquisition of Cash America (AC, ¶ 58); (ii) field auditors did not focus sufficiently on MLA compliance (AC, ¶¶ 59-60); and (iii) the legal department was "almost wiped out" when its General Counsel resigned in September 2021 (AC, ¶ 61). None of these allegations supports an inference

---

[16]    App. 4, at 103; App. 13, at 279; App. 22, at 465; App. 32, at 649.

of scienter, let alone the strong inference of scienter required to sustain a securities fraud claim.

**Culture**.  The Amended Complaint attempts to plead a lack of internal controls and audit processes on the basis of CW-1's purported belief that the Company's "culture changed for the worse" after the 2016 acquisition of Cash America.  [AC, ¶ 58.]  This one-sentence allegation falls far short of pleading scienter under the PSLRA.  *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 185-86 (5th Cir. 2019) ("[T]he instant allegations based on the Audit Committee's finding of an inappropriate tone at the top do not strongly support an inference of scienter.").

**Compliance**.  The Amended Complaint next asserts that "compliance with the MLA, and other issues under the CFPB's oversight, were not high on the list of the Company's priorities." [AC, ¶ 59.]  CW-1 admitted that the Company undertook affirmative steps to monitor compliance with the MLA and that field auditors who visited his stores focused on "inventory, accounting and related controls."  [AC, ¶¶ 59, 217(e).]  That is inconsistent with a mental state embracing fraud. CW-2 similarly stated that he conducted audits and "never observed any violations of the MLA." [AC, ¶ 60.]   At best, these allegations constitute a poor attempt to plead a claim for mismanagement, which is not actionable under the federal securities laws.  *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) ("Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.").

**Resignations**. The Amended Complaint last touts CW-1's belief that the Company's legal department was "almost wiped out" when the Company's General Counsel resigned in September 2021.  [AC, ¶ 61.]  In *Southland*, the Fifth Circuit held that the resignation of executives is "unavailing as proof of the commission of fraud by these or other individuals."  *Southland*, 365 F.3d at 383.  In *Abrams*, the court further held that the resignations of key accounting officials did not have "any scienter implications" where the officials resigned to "pursue other interests."  292

F.3d at 434.  The Amended Complaint admits that the Company's General Counsel resigned "in order to assume a senior leadership role at another publicly traded company in the financial services industry" (AC, ¶ 61) – "not due to a disagreement . . . on any matter relating to the Company's operations, policies or practices" (Appx. 38, at 736).  Thus, the resignation of the Company's General Counsel does not support a strong inference of scienter.  *See, e.g.*, *Six Flags*, 524 F. Supp. 3d at 537 ("The Court is not persuaded by Plaintiffs' vague and circumstantial allegations which fail to adequately link the departures to the alleged fraud."); *Match Grp.*, 529 F. Supp. 3d at 603 (individual "resignations, without more, do not bear on the scienter analysis").

### b.    MLA Training and Education.

The Amended Complaint alternatively alleges that statements by CWs "confirm" that the Company "failed to implement adequate MLA training and education programs."  [AC, ¶¶ 62-69.]  These statements attributed to the CWs center on two issues: (i) knowledge of an optional Department of Defense ("DOD") database; and (ii) general training and education on the MLA.

**MLA Database**. The Amended Complaint alleges that several CWs were not aware of an optional database maintained by the DOD that could be used to verify the military status of a customer.  [AC, ¶¶ 64-65.]  The pleading concedes that a lender could, "but [was] not required to, verify the status of an applicant as a covered borrower by accessing the information available" in the database.  [AC, ¶ 41.]  Lead Plaintiff asserts that "employees often did not check the MLA Database to ensure loans were being made to eligible customers."  [AC, ¶ 65.]  None of the CWs states that he or she brought this supposed concern to the attention of Defendants or anyone in management and, even if they had done so, no inference of scienter can be found based on the use or non-use of one of a number of acceptable methods of complying with the MLA.[17]

---

[17]    None of the CWs reveals any awareness of how MLA compliance actually occurred for the Company's pawn transactions.  None discuss the questionnaires or signed attestations that are

- 21 -

**Training and Education.** The Amended Complaint last asserts that Defendants failed to "implement proper training and education programs," thereby rendering "ineffective" the Company's internal controls. [AC, ¶ 66.] The Amended Complaint actually contradicts this conclusion. The CWs referenced for this allegation confirm that the Company provided training on MLA-related procedures. CW-1 recalled receiving a Company memo "explaining how the Company's POS software would prompt a series of four questions pertaining to military service at the start of each loan transaction" and that he supervised employees on the proper implementation of the Company's controls. [AC, ¶¶ 66, 69.] CW-5 acknowledged that "when FirstCash acquired Cash America, the Company provided some basic training or instructions to employees regarding the MLA." [AC, ¶ 67.] Neither of these types of actions is consistent with an intent to deceive or reckless disregard of internal controls. *Oughtred v. E\*Trade Fin. Corp.*, No. 08 Civ. 3295(SHS), 2011 WL 1210198, at \*10 (S.D.N.Y. Mar. 31, 2011) ("Plaintiffs' conclusory allegations of corporate scienter based on inadequate training of financial advisors cannot satisfy the heightened pleading standards of the PSLRA."); *Budde v. Global Power Equip. Grp., Inc.*, No. 3:15-cv-1679-M, 2017 WL 6621540, at \*7 (N.D. Tex. Dec. 27, 2017) (cutting accounting department's training budget to $0 and overseeing the departure of accountants does "not support the contention that [defendants] knew that financial reports, at the time they were published, were false or that they were severely reckless as to their falsity").

---

required before a pawn transaction is permitted to proceed. The Amended Complaint similarly ignores that the governing regulations recognize that a customer self-identification protocol is an appropriate vehicle for assessing MLA compliance. *See* Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 Fed. Reg. 43560, 43576, 2015 WL 4452309 (July 22, 2015) ("Under the [DOD]'s final rule, as under the existing rule and the Proposed Rule, a creditor who seeks to ascertain whether consumer-applicants are covered borrowers may use a 'simple check box on credit applications' . . . or any other method that suits its business operations.") (citation omitted).

####       4.       The Scienter Allegations Are Not as Cogent and Compelling as the Opposing Inferences.

Even if the scienter allegations are considered holistically, they fall far short of pleading a strong inference of scienter as required under the PSLRA. The Supreme Court has made clear that the court "must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323; *accord Shaw Grp.,* 537 F.3d at 533. And, in doing so, the "strong" inference of fraudulent intent "must be more than merely plausible or reasonable – it must be cogent, and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. To that end, "omissions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind.'" *Range Res.*, 2022 WL 976003, at *16 (quoting *Tellabs*, 551 U.S. at 326).

Here, the inferences drawn from the allegations in the Amended Complaint are not as cogent and compelling as the opposing inferences. No "smoking gun" documents are pleaded, no meetings or communications between CWs and defendants are referenced, and no accounting restatement has occurred. Moreover, the conspicuous absence of insider stock sales "supports an inference opposing the claim that a defendant acted with scienter." *Citizens*, 2018 WL 2107205, at *4; *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008) (lack of suspicious stock sales "weighs against inferring scienter"); *Metzler*, 540 F.3d at 1067 (without suspicious stock sales, the more plausible inference to draw is not that the defendant acted with scienter, but rather "that there was no insider information from which to benefit"); *Plumbers Local #200 Pension Fund v. Wash. Post Co.*, 930 F. Supp. 2d 222, 227 (D.D.C. 2013); *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198-99 (2d Cir. 2009) (lack of insider sales requires that scienter allegations be "correspondingly greater"). Indeed, rather than bail out of their substantial holdings in advance of disclosure of the purported fraud, Defendants have maintained their investments and

- 23 -

remained substantial investors in the Company.  There simply is no basis to conclude that the Amended Complaint's scienter allegations are "cogent, and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.

### C.     The Amended Complaint Fails to Plead Loss Causation.

The Amended Complaint's failure to plead loss causation constitutes a third independent basis for dismissing the claims in the Amended Complaint.  In *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court held that to maintain a claim for securities fraud, the complaint must demonstrate a "causal connection between the material misrepresentation and the loss."  *Id*. at 342.   In doing so, the Court rejected the argument that loss causation can be established by pleading that a plaintiff purchased stock at an inflated price.  *Id*.  Instead, "the corrective disclosure must reveal some information not already known to the market, otherwise 'the stock price would have incorporated that information, and its disclosure could not have caused a loss.'"  *Emps.' Ret. Sys. of Haw. v. Whole Foods Mkt., Inc*., 905 F.3d 892, 904 (5th Cir. 2018).

Lead Plaintiff asserts that the filing of the CFPB lawsuit "revealed the misleading character of Defendants' statements and omissions" and that the stock price declines that followed "were directly and proximately caused by Defendants' materially misleading statements."  [AC, ¶ 220.] Allegations in a lawsuit do not correct the falsity of any challenged statement.  *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("[T]he commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b)."); *Martin v. GNC Holdings, Inc.*, No. 2:15-cv-01522, 2017 WL 3974002, at *18-19 (W.D. Pa. Sept. 8, 2017) ("[The] Complaint contains allegations of unproven misconduct, thus it is not a corrective disclosure . . . ."); *Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F. Supp. 3d 1210, 1231 (M.D. Fla. 2014) (no loss causation as "[t]he filing of a civil complaint certainly does not establish that the defendant committed or is liable for the conduct alleged").

- 24 -

\*    \*    \*    \*    \*

In the end, the Amended Complaint fails on three fronts: it lacks an actionable misrepresentation or omission, it does not demonstrate a strong inference of scienter, and it does not adequately plead loss causation.  The failure to plead each of these threshold elements of the claim dooms the Amended Complaint, and it should be dismissed with prejudice.

## II.    THE AMENDED COMPLAINT FAILS TO PLEAD A PLAUSIBLE CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT.

The Amended Complaint purports to state a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  [AC, ¶ 251.]  In order to state such a claim, a plaintiff must show both (i) a primary violation of the securities laws; and (ii) that "the defendant had an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014).  In other words, "[c]ontrol person liability is secondary only and cannot exist in the absence of a primary violation."  *Southland*, 365 F.3d at 383.  Accordingly, because the Amended Complaint fails to plead a primary violation, the 20(a) claims fail as well. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the motion should be granted and the Amended Complaint should be dismissed with prejudice.

DATED:  June 8, 2022                    Respectfully submitted,

**ALSTON & BIRD LLP**
Laura B. Hunt (TX Bar No. 24120912)

*/s/ Laura B. Hunt*
301 Commerce, Suite 3635
Fort Worth, TX 76102
Telephone: (214) 922-3400
Fax: (214) 922-3899
laura.hunt@alston.com

**ALSTON & BIRD LLP**
  Charles W. Cox (*pro hac vice*)
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-3004
Telephone: (213) 576-1000
Fax: (213) 576-1100
charles.cox@alston.com

**ALSTON & BIRD LLP**
  Matthew E. Newman (*pro hac vice* pending)
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7987
Fax: (404) 881-7777
matt.newman@alston.com

*Counsel for Defendants FirstCash Holdings, Inc.,
Rick L. Wessel and R. Douglas Orr*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 8, 2022, I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system.


*/s/ Laura B. Hunt*
Laura B. Hunt