# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE FIRSTCASH HOLDINGS, INC. SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§ | Civil Action No. 4:22-cv-00033-P<br><br>CLASS ACTION |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

## ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

<b>Page</b>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

     A.    The Amended Complaint Fails to Plead a Misrepresentation or Omission............ 2

     B.    The Amended Complaint Fails to Plead a Strong Inference of Scienter. ............... 4

     C.    The Amended Complaint Fails to Plead Loss Causation..................................... 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...............................................................................5, 7

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
   No. 6:12-1609, 2013 WL 1100819 (W.D. La. Mar. 15, 2013)......................................6, 7, 10

*Elec. Workers Pension Fund, Local 103 v. Six Flags Ent. Corp.*,
   524 F. Supp. 3d 501 (N.D. Tex. 2021) (Pittman, J.)......................................3, 5, 6, 7

*Gamboa v. Citizens, Inc.*,
   No. A-17-CV-241-RP, 2018 WL 2107205 (W.D. Tex. May 7, 2018)......................................9

*In re Alamosa Holdings, Inc. Sec. Litig.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ...............................................................................4

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010)...............................................................................6

*In re Integrated Elec. Servs., Inc. Sec. Litig.*,
   No. 4:04-CV-3342, 2006 WL 54021 (S.D. Tex. Jan. 10, 2006)....................................6

*In re Key Energy Servs. Inc. Sec. Litig.*,
   166 F. Supp. 3d 822 (S.D. Tex. 2016) ...............................................................................2

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*,
   537 F.3d 527 (5th Cir. 2008) ...............................................................................9

*Jacobowitz v. Range Res. Corp.*,
   No. 4:21-cv-0751-P, 2022 WL 976003 (N.D. Tex. Mar. 31, 2022) (Pittman, J.) .............3, 6, 9

*Markman v. Whole Foods Mkt., Inc.*,
   No. 1:15-CV-681-LY, 2016 WL 10567194 (W.D. Tex. Aug. 9, 2016) ...................................4

*MicroCapital Fund LP v. Conn's Inc.*,
   No. 4:18-CV-1020, 2019 WL 3451153 (S.D. Tex. July 24, 2019) .........................................4

*N. Port Firefighters' Pension v. Temple-Inland, Inc.*,
   936 F. Supp. 2d 722 (N.D. Tex. 2013) ...............................................................................8

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ...............................................................................1, 6, 9

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ...............................................................................2

*Ret. Sys. of Haw. v. Whole Foods Mkt., Inc.*,
  905 F.3d 892 (5th Cir. 2018) ..........................................................................................3

*Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*,
  935 F.3d 424 (5th Cir. 2019) .......................................................................................4, 8

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977)........................................................................................................7

*Shen v. Exela Techs., Inc.*,
  No. 3:20-CV-0691-D, 2021 WL 2589584 (N.D. Tex. June 24, 2021) ......................................4

*Smallen v. Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ......................................................................................9

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d 353 (5th Cir. 2004) ..........................................................................................7

*Stephens v. Uranium Energy Corp.*,
  No. H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016) ...............................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................................1, 8, 9

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4................................................ *passim*

## PRELIMINARY STATEMENT

The PSLRA requires district courts to carefully scrutinize securities fraud complaints and perform a vital gatekeeper role to winnow out meritless suits. *See* 15 U.S.C. § 78u-4; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). The heightened pleading standard mandated by the PSLRA makes it difficult for such claims to survive a motion to dismiss. *See Neiman v. Bulmahn,* 854 F.3d 741, 746 (5th Cir. 2017). The Opening Brief ("OB") [Doc. 46] demonstrated how the Amended Complaint falls far short and that the claims fail as a matter of law. More specifically, Defendants established that:

- The Amended Complaint fails to plead particularized facts demonstrating that the challenged statements were false or misleading. OB, at 6-13. Including boilerplate "reasons" why statements were misleading is not sufficient under the PSLRA.

- The Amended Complaint is devoid of particularized facts supporting a strong inference of scienter as to each defendant and each challenged statement. OB, at 14-24. Lacking allegations of insider stock sales, "smoking gun" documents or an accounting restatement, the Amended Complaint relies on razor thin circumstantial allegations from confidential witnesses who never interacted with the Individual Defendants, or even had knowledge of their activities. Considered individually or holistically, the allegations do not create a strong inference of scienter necessary to sustain these claims.

- The filing of the CFPB action was not sufficient to plead loss causation as it did not reveal the "truth" concerning any alleged fraud. OB, at 1, 24.

- The collateral Section 20(a) claims fail once the primary claims fail. OB, at 25.

The Opposition [Doc. 52] does not salvage these unmeritorious claims, particularly since the high pleading standard for fraud claims is applied "with bite and without apology." *Stephens*

*v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *9 (S.D. Tex. July 15, 2016).[1]

Instead, the Opposition presents conclusions and speculation masquerading as facts. It relies on inferences that are either unsupported by the allegations or are contradicted by them. It then compounds those errors by misapplying and misconstruing the applicable law, or simply ignoring it when not helpful to Lead Plaintiff's position. Given these fundamental and incurable shortcomings, the Motion should be granted and the claims should be dismissed with prejudice.

## ARGUMENT

The Opening Brief demonstrated that the Amended Complaint fails to plead multiple elements of a Section 10(b) claim, including (i) a material misstatement or omission; (ii) a strong inference of scienter; and (iii) loss causation. OB, at 6-25.

### A.    __The Amended Complaint Fails to Plead a Misrepresentation or Omission.__

The Amended Complaint fails to allege an actionable misrepresentation or omission with the requisite particularity. OB, at 6-13. The Opposition does not demonstrate otherwise.

***Financial Performance.*** The Amended Complaint challenges statements accurately reporting the Company's financial performance. OB, at 6-9. The Opening Brief noted that "[w]hen a securities fraud claim is premised on the defendant's predicate violations of law or accounting standards, the facts of that underlying violation must be pled with particularity." *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 99 (2d Cir. 2021). The Amended Complaint does not plead a single violation of the MLA by "identifying the nature of the violation, when, where, and who was involved." *In re Key Energy Servs. Inc. Sec. Litig.,* 166 F. Supp. 3d 822, 872 (S.D. Tex. 2016).

---

[1]    Unless otherwise noted, internal citations and quotation marks are omitted throughout.

The Amended Complaint also makes "no attempt to plead how much of its revenue [the Company] overstated in '*each* statement alleged to have been misleading.'" *Emps.' Ret. Sys. of Haw. v. Whole Foods Mkt., Inc*., 905 F.3d 892, 903 (5th Cir. 2018) (quoting 15 U.S.C. § 78u-4(b)(1)). "[U]nder the heightened pleading standards set forth by the PSLRA, the plaintiffs must allege specifically how much revenue was overstated, how that amount was determined, and why the defendants were required to report revenue differently." *Elec. Workers Pension Fund, Local 103 v. Six Flags Ent. Corp*., 524 F. Supp. 3d 501, 529 (N.D. Tex. 2021) (Pittman, J.); *see also Jacobowitz v. Range Res. Corp*., No. 4:21-cv-0751-P, 2022 WL 976003, at \*12 (N.D. Tex. Mar. 31, 2022) (Pittman, J.).[2]

***Regulatory Environment***.  The Opening Brief established that claims based on statements regarding the Company's regulatory environment were misplaced.  OB, at 9-12.  The Company advised investors of changes to the MLA and the potential impact on its pawn business.[3]  OB, at 10-11.  The Opposition asserts that the Company "may have conveyed ***potential*** risks, but it did not disclose that the Company knew, or disregarded with severe recklessness, that it was ***currently*** experiencing these drawbacks."  Oppn., at 7.  There are no particularized allegations anywhere in the Amended Complaint supporting that theory or that the MLA expansion had a material impact on the Company – a fact distinguishing it from *Lormand* and other cases cited in the Opposition.

---

[2]  The Opposition attempts to avoid these shortcomings by alleging that the Company engaged in 3,600 pawn transactions that violated the MLA over a five-year period and that its "business and financial results would be materially and adversely affected" by "at least the dollar amount of those loans."  Oppn., at 12-13.  The Company disclosed in SEC filings that its average pawn transaction in the United States during this time period ranged from $148 in June 2017 (App. 7, at 164) to $215 in March 2021 (App. 34, at 677).  Taken together, the challenged transactions generated proceeds of less than $775,000 over a five-year period for a business generating over $1.6 **billion** in annual revenue (*i.e.*, a miniscule percent of business during the relevant period even if one erroneously assumes that the amount of loan proceeds equals revenue).

[3]  *See* App. 4, at 095, 098-99; App. 13, at 275; App. 22, at 462; App. 32, at 645.

***Training and Internal Controls.*** The Opening Brief demonstrated that challenges to statements regarding the Company's operations and training do not state an actionable claim. OB, at 12-13. The Opposition concedes that the Company had training programs and internal audit functions, but suggests that the training programs were ineffective and the Company "did not have sufficient internal controls to prevent widespread MLA violations." Oppn., at 9. There is no allegation that Defendants knew about any MLA violation when making these statements, and "[f]raud by hindsight is not an actionable claim under the securities laws." *In re Alamosa Holdings, Inc. Sec. Litig*., 382 F. Supp. 2d 832, 866 (N.D. Tex. 2005); *see also MicroCapital Fund LP v. Conn's Inc*., No. 4:18-CV-1020, 2019 WL 3451153, at \*12 (S.D. Tex. July 24, 2019) (same).

***Item 303 Disclosure.*** The Fifth Circuit has "never held that Item 303 creates a duty to disclose under the Securities Exchange Act." *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc*., 935 F.3d 424, 436-37 (5th Cir. 2019). The Opposition ignores this controlling authority and instead argues that the allegations are sufficient because they "adequately explained the reason or reasons 'why' [Defendants'] alleged violation of Item 303 is misleading or fraudulent." Oppn., at 15. That is a bridge too far. "Item 303 is not a magic black box in which inadequate allegations under Rule 10b-5 are transformed, by means of broader and different SEC regulations, into adequate allegations under Rule 10b-5." *Markman v. Whole Foods Mkt., Inc*., No. 1:15-CV-681-LY, 2016 WL 10567194, at \*10 (W.D. Tex. Aug. 9, 2016). That reasoning applies with equal force to Item 105, which no Fifth Circuit court has found to be a basis for a Section 10(b) claim.

**B.        The Amended Complaint Fails to Plead a Strong Inference of Scienter.**

The Amended Complaint fails to plead a strong inference of scienter for each defendant and claim. OB, at 14-24. "The PSLRA pleading standard for scienter is especially challenging for plaintiffs." *Shen v. Exela Techs., Inc*., No. 3:20-CV-0691-D, 2021 WL 2589584, at \*8 (N.D. Tex. June 24, 2021). It has not been met here.

- 4 -

**First**, Lead Plaintiff continues to press a group pleading theory which this Circuit has repeatedly rejected. OB, at 14-15. The Opposition asserts that the cases cited by Defendants are "inapplicable" because the knowledge of CWs is not attributed to Defendants. Oppn., at 23. That misses the point. The PSLRA requires that "the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The scienter allegations broadly attributed to Defendants as a group do not meet that standard. *See, e.g.,* AC, ¶¶ 213, 215, 217.

**Second**, the scienter allegations fail to meet the PSLRA's heightened pleading standard. OB, at 15-22. Lead Plaintiff does not allege direct proof of intentional or severely reckless omissions on the part of any defendant. Accordingly, "the strength of [the] circumstantial evidence of scienter must be correspondingly greater." *Six Flags*, 524 F. Supp. 3d at 535.

*Corporate Reports*. The Opposition asserts that because the Company's "proprietary computer system" allowed management to "continuously monitor store transactions, assets, loans and operating results," the Individual Defendants "turned a blind eye to – or at the very least were severely reckless in not knowing about – the widespread violations of both the MLA and the 2013 Consent Order." Oppn, at 17. *First*, there is a vast chasm of plausibility separating the ordinary fact that the company had a computer system that monitors store functions and evidence of "widespread" MLA violations. There are no allegations linking the two, and no such reports were alleged in the CFPB litigation even after a six-month investigation. An "unsupported general claim about the existence of confidential corporate reports that reveal information contrary to reported accounts is insufficient to survive a motion to dismiss." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002). Instead, for "internal corporate reports alone to support a strong inference of scienter (1) the complaint must have corroborating details regarding the contents of allegedly

contrary reports, their authors and recipients[,] and (2) the corporate reports be connected to the speaking executive in a persuasive way." *Neiman*, 854 F.3d at 748. *Second*, it ignores that there are no allegations that this supposed information was ever presented to or reviewed by Messrs. Wessel or Orr. *See Six Flags*, 524 F. Supp. 3d at 536 ("Reliance on the internal reports is particularly weak as to [senior executive] since there is no pled allegation that the reports were presented to [senior executive] or that he ever reviewed them."); *Range Res.*, 2022 WL 976003, at *17. *Third*, it assumes that the Company's "proprietary computer system" provides information in its management interface to discern whether a transaction complied with the MLA. Unsupported assumptions about unspecified systems do not support an inference of scienter.

*Magnitude and Time-Span of Alleged Fraud.* The Opposition asserts that "the magnitude and time-span of the alleged fraud bolsters the strong inference of scienter." Oppn., at 18. The Opposition cites a single case, *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696 (W.D. Tex. 2010), for that misplaced proposition. That case involved an accounting restatement and, even then, the magnitude and time-span allegations were "not sufficient on their own to establish scienter." *Id.*, at 722; *cf. In re Integrated Elec. Servs., Inc. Sec. Litig.*, No. 4:04-CV-3342, 2006 WL 54021, at *3 (S.D. Tex. Jan. 10, 2006) (restatement reducing net income by $5.7 million over 30 months when revenues exceeded $1 billion "surely cannot, by itself, support an inference of scienter"). There has been no restatement here and the total revenue attributed to the alleged MLA violations is not material to a business generating over $1.6 ***billion*** in annual revenue.

*Internal Controls.* The Opposition next asserts that "Defendants' failure to implement ***effective*** training, education, and controls to prevent violations of the MLA and the 2013 Consent Order is a strong indication of reckless behavior." Oppn., at 19. The sole authority cited for this proposition is *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, No. 6:12-1609, 2013 WL

1100819 (W.D. La. Mar. 15, 2013). *LHC* did not concern a claim related to ineffective training and education, but rather focused on the actual knowledge of the alleged fraud by defendant executives along with significant insider stock sales. There are no such allegations here. Instead, there is a forced effort to plead liability based on the subjective hindsight of two former employees in a 17,000-person organization as to the effectiveness of training. If anything, those individuals only serve to confirm that Defendants had a systemic MLA compliance program in place which required consumers to identify whether they were covered servicemembers before a pawn transaction could proceed. Allegations of corporate mismanagement simply do not state a federal securities claim. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977).

   ***Departure of General Counsel.*** The Opposition asserts that the "rapid departure" of the Company's General Counsel during the CFPB investigation also supports an inference of scienter. Oppn, at 21. The resignation of executives is "unavailing as proof of the commission of fraud by these or other individuals." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.,* 365 F.3d 353, 383 (5th Cir. 2004); *Abrams*, 292 F.3d at 434 (no inference where official resigned to "pursue other interests"). The Opposition dismisses these authorities in a footnote on the theory that "none of those cases involves a resignation of an executive during a government investigation that is directly tied to the fraud." Oppn., at 21 n.17. The test is not whether the investigation concerned the alleged fraud, but rather whether the executive who resigned was involved in the fraud. *See Six Flags*, 524 F. Supp. 3d at 537 ("The Court is not persuaded by Plaintiffs' vague and circumstantial allegations which fail to adequately link the departures to the alleged fraud."); *Abrams*, 292 F.3d at 434 (no allegation resigning official knew of accounting irregularities). The Amended Complaint admits that the General Counsel resigned "in order to assume a senior leadership role at another publicly traded company in the financial services industry." AC, ¶ 61.

***SOX Certifications.*** The Opposition asserts that SOX certifications support an inference of scienter. Oppn., at 22. The Opposition misstates the applicable standard for that conclusion through the strategic placement of ellipses: "[SOX] certifications support scienter only if there are facts establishing that the officer who signed the certification had a reason to know, or should have suspected**, *due to the presence of glaring accounting irregularities or other 'red flags,'*** that the financial statements contained material misstatements or omissions." *Pier 1 Imps.*, 935 F.3d at 434 (emphasis reflects portion omitted by Lead Plaintiff). The Opposition does not identify any "glaring accounting irregularities or other 'red flags.'" The misapplication of the proper standard does not provide a toehold for establishing scienter. OB, at 17.

**Third**, the sum of the scienter allegations is far less compelling than the competing nonfraudulent inferences. OB, at 15-24. The Opposition asserts that the Amended Complaint "pleads circumstantial evidence that, when added up and reviewed holistically, create a cogent and compelling inference of scienter for each defendant." Oppn., at 16. That is not sufficient. The "strong" inference of scienter "must be more than merely plausible or reasonable – ***it must be cogent, and at least as compelling as any opposing inference of nonfraudulent intent***." *Tellabs*, 551 U.S. at 314 (emphasis added). The opposing inferences here are far more cogent and compelling. *See N. Port Firefighters' Pension v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 738 (N.D. Tex. 2013) ("a court will not strain to find inferences favorable to the plaintiffs when determining whether scienter allegations have been sufficiently pleaded").

***No Motive.*** The Amended Complaint does not allege any motive for the defendants to engage in securities fraud. "Motive is a critical—though not essential—aspect of a successful claim for securities fraud." *Pier 1 Imps.*, 935 F.3d at 431. Because Lead Plaintiff failed to allege a "clear motive" here, "the strength of [the] circumstantial evidence of scienter must be

- 8 -

correspondingly greater." *Neiman,* 854 F.3d at 748.

***No Insider Stock Sales*.** The absence of insider stock sales undermines an inference of scienter. OB, at 23. The Opposition states that insider sales are not required to support scienter. Oppn., at 16. The issue is not whether a plaintiff must show insider sales, but rather that the absence of insider stock sales is powerful and compelling evidence that weighs against a finding of scienter. *See Gamboa v. Citizens, Inc.*, No. A-17-CV-241-RP, 2018 WL 2107205, at \*4 (W.D. Tex. May 7, 2018) ("Plaintiffs respond by arguing that insider stock sales are not required to allege scienter. But that is not the point. Though such allegations are not required, their absence supports an inference opposing the claim that a defendant acted with scienter.") (collecting cases).

***No Corroborating Documents*.** The absence of corroborating documents also weighs against a finding of scienter. Internal corporate reports are not quoted or referenced. "[O]missions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind.'" *Range Res.*, 2022 WL 976003, at \*16 (quoting *Tellabs*, 551 U.S. at 326).

***No Actual Knowledge.*** There are no allegations that Messrs. Wessel or Orr were aware of any MLA violation. "In the absence of such allegations, Plaintiff's argument is simply another variation of fraud by hindsight, which fails to support an inference of scienter." *Smallen v. Western Union Co.*, 950 F.3d 1297, 1310 (10th Cir. 2020).

***Confidential Witnesses.*** "[C]ourts must discount allegations from confidential sources" because they "afford no basis for drawing the plausible competing inferences required by *Tellabs.*" *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp.*, 537 F.3d 527, 535 (5th Cir. 2008). The CWs referenced in the Amended Complaint do not allege that they ever interacted with Messrs. Wessel or Orr, or even had knowledge of their activities.

- 9 -

In short, the Amended Complaint fails to plead a cogent inference of scienter that is at least as compelling as the opposing inferences of nonfraudulent intent.  That is fatal to these claims.

### C.        The Amended Complaint Fails to Plead Loss Causation.

The failure to plead loss causation is an independent basis for dismissing these claims.  OB, at 24.   The Opposition asserts that the CFPB action "corrected the falsity of Defendants' statements" and "informed the market that Defendants violated the MLA."  Oppn., at 24-25.  Not so.  The lone case cited by Lead Plaintiff found loss causation precisely because the corrective statement disclosed "evidence that [the] statements were false," including "emails from several Company executives showing that the change in treatment patterns was the result of a conscious, deliberate campaign by [the CEO] and other LHC executives to maximize Medicare revenue regardless of patient need."  *LHC Grp.,* 2013 WL 1100819, at *6.  No such "truth" was revealed here.  Indeed, the CFPB emphasized that its "complaint is not a final finding or ruling that the defendants have violated the law."  OB, at 1 (quoting App. 40, at 767).

### CONCLUSION

For the foregoing reasons and the reasons set forth in their Opening Brief, Defendants submit the Amended Complaint should be dismissed with prejudice.

DATED:  July 28, 2022                               Respectfully submitted,

                                                            **ALSTON & BIRD LLP**
                                                               Laura B. Hunt (TX Bar No. 24120912)

                                                            */s/ Laura B. Hunt*
                                                            301 Commerce, Suite 3635
                                                            Fort Worth, TX 76102
                                                            Telephone: (214) 922-3400
                                                            Fax: (214) 922-3899
                                                            laura.hunt@alston.com

**ALSTON & BIRD LLP**
   Charles W. Cox (*pro hac vice*)
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-3004
Telephone: (213) 576-1000
Fax: (213) 576-1100
charles.cox@alston.com

**ALSTON & BIRD LLP**
   Matthew E. Newman (*pro hac vice*)
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7987
Fax: (404) 881-7777
matt.newman@alston.com

*Counsel for Defendants FirstCash Holdings, Inc.,*
*Rick L. Wessel and R. Douglas Orr*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 28, 2022, I served the foregoing on all counsel of record who have appeared in this matter via the Court's CM/ECF system.

/s/ Laura B. Hunt
Laura B. Hunt